UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ELI LILLY AND COMPANY,         )<br>            Plaintiff,         )<br>                              )<br>    vs.                       )<br>                              )<br>SICOR PHARMACEUTICALS, INC. and )<br>TEVA PHARMACEUTICALS USA, INC., )<br>            Defendants.       ) | 1:06-cv-238-SEB-JMS<br>**REDACTED VERSION** |

**ORDER DENYING DEFENDANTS' MOTION TO DISMISS OR TRANSFER**

This cause is before the Court on the Motion to Dismiss or, in the Alternative, Transfer to the Central District of California [Docket No. 27] filed by Defendants, SICOR Pharmaceuticals, Inc. ("Sicor Pharma") and Teva Pharmaceuticals USA, Inc. ("Teva USA") (collectively, "Defendants"). Defendants contend that this court lacks personal jurisdiction over them and seek dismissal or transfer of this case to the Central District of California. Plaintiff Eli Lilly and Company ("Lilly") maintains that this court does have personal jurisdiction over Defendants, and that if transfer is warranted, it ought to be to the District of Delaware rather than the Central District of California. For the reasons detailed in this Entry, we <u>DENY</u> Defendants' Motion.

Lilly brought this action against Defendants on February 15, 2006. Lilly's Complaint alleges that Sicor Pharma infringed on two Lilly patents[1] by filing two Abbreviated New Drug Applications ("ANDAs") with the FDA seeking approval to

---

[1] The patents at issue are U.S. Patent Nos. 4,808,614 and 5,464,826. Compl. ¶¶ 11-12.

manufacture and sell an injectable form of the chemotherapy drug gemcitabine, which Lilly markets as GEMZAR®. Lilly alleges that Teva USA induced Sicor Pharma to file the ANDAs, and therefore also infringed upon Lilly's patents.[2]

On May 12, 2006, Defendants filed this Motion to Dismiss or Transfer asserting lack of personal jurisdiction. On Lilly's motion, Magistrate Judge Shields opened a period of jurisdictional discovery regarding Defendants' contacts with Indiana, and granted Lilly an enlargement of time to respond to Defendants' motion until after the completion of such discovery. See Docket No. 79. The motion became fully briefed as of March 9, 2007.

## Factual Background

*Sicor Pharma*

Sicor Pharma, a developer and marketer of generic injectable drugs, is a Delaware corporation with its principal place of business in Irvine, California. Sicor Pharma is a wholly owned subsidiary of SICOR Inc., which is in turn a subsidiary of Teva USA.[3] Compl. ¶ 2.

Sicor Pharma has no real property, facilities, assets, offices, telephone listings, or

---

[2] In addition to current Defendants Sicor Pharma and Teva USA, Lilly's Complaint also named SICOR, Inc. and Teva Pharmaceutical Industries Ltd. as defendants. Those parties were voluntarily dismissed by Lilly on June 22, 2006. See Docket No. 61.

[3] Though Sicor Pharma acknowledges this corporate relationship with Teva USA, it maintains that it is not directly controlled by Teva USA, is solvent and adequately capitalized, and observes full corporate formalities. Defs.' Mem. at 3, citing Rosenberg Aff. ¶¶ 4-8; Burton Aff. ¶ 14.

bank accounts in Indiana. Burton Aff. ¶¶ 4-5. Sicor Pharma claims that it has no agreements with Indiana residents and has not attempted to enter into any such agreements for the past several years. Id. ¶¶ 12-13. It maintains that it has no salespersons or other employees in Indiana; that it makes no direct sales in Indiana; and that all its sales transactions are consummated in California. Id. ¶¶ 7, 10-11.

However, Sicor Pharma acknowledges that some of its products are "indirectly sold" to Indiana customers. Defs.' Mem. at 3. These sales are made via independent wholesalers located outside of Indiana. These wholesalers purchase products from Sicor Pharma and then resell them to Indiana entities who are members of "group purchase organizations," or "GPOs." Defs.' Reply at 3; Pl.'s Surreply at 1. GPOs negotiate with Sicor Pharma to set the price that GPO members will pay for Sicor Pharma products. Sicor Pharma maintains that it "does not direct the activities of [the] independent wholesalers, or otherwise control where and to whom the wholesalers sell Sicor Pharma products." Defs.' Reply at 3.

Sales realized by Sicor Pharma through this channel amounted to $         (or 2.2% of its total U.S. sales) in 2004, $            (or 2.6% of its total U.S. sales) in 2005, and $         (or 2.7% of its total U.S. sales) in the first six weeks of 2006. Pl.'s Resp. at 2, citing Pl.'s Ex. 1. Thus, Sicor Pharma realized approximately $          in sales to Indiana customers from 2004 to 2006. There were, during this period, 725

purchasers of Sicor Pharma products in Indiana. Pl.'s Ex. 2; Bianco Aff. ¶ 27.[4] Lilly classifies these entities as "customers"; Sicor Pharma resists this characterization, referring to them instead as "downstream purchasers of Sicor Pharma products." Defs.' Reply. at 6.

*Sicor Pharma's Indiana Marketing Efforts*

Sicor Pharma's marketing efforts in Indiana involved both in-person sales visits (to large accounts) and telemarketing calls. Sicor Pharma characterizes these efforts as "driving compliance" with a customer's GPO agreement; Lilly characterizes them as an attempt to "induce . . . GPO members and other Sicor Pharma customers to purchase [Sicor Pharma] products[.]" Pl.'s Surreply at 1-2.

Lilly reports that Sicor Pharma sales representatives Jeff Herberholt and Mark Hermann made at least 156 separate visits to healthcare entities within Indiana between January 2004 and mid-February 2006.[5] At least one of these two representatives visited

---

[4] Lilly contends that, because several of the listed purchasers are multi-branch chains, the true number of Sicor Pharma "customers" approaches 1500. Pl.'s Resp. at 2. Sicor Pharma counters that there is no basis for this calculation, as there is "no evidence that individual stores purchased their own products, or that each of the individual stores in a retail chain even received Sicor Pharma products." Defs.' Reply at 7 n. 5.

[5] Lilly asserts that this number is "conservative" because Sicor Pharma's Customer Relationship Management ("CRM") database (which tracks sales visits) crashed, causing all data for Indiana sales visits from March 2004 through April 2005 to be lost. Though other records were used to reconstruct these sales visits, Lilly maintains that these alternate records "do not present the complete picture." Pl.'s Resp. at 3 fn. 3.

Sicor Pharma maintains that Lilly's count of the sales visits is incorrect – that Sicor Pharma sales representatives made only twenty-three visits to Indiana during the relevant timeframe. It appears to us that Lilly and Sicor Pharma's tallies are so divergent because they
(continued...)

4

Indiana during seventeen of the twenty-six months in question. Pl.'s Resp. at 3, citing Bianco Aff. ¶ 27. The meetings were typically set up by phone. Herberholt Dep. at 147 lns. 13-22, 150 lns. 16-20. Mr. Herberholt testified that, in deciding which products to promote during sales meetings, he would focus on Sicor Pharma products that were affiliated with the purchaser's GPO agreement. Id. at 84 lns. 3-15. Sales representatives provided purchasers with product-specific marketing materials for Sicor Pharma products, such as glossy advertisements ("slicks") and other promotional items. Pl.'s Resp. at 4. At least some of the "slicks" contained the statement: "To place your order, call your wholesaler or distributor today." Pl.'s Exs. 11-13. Mr. Herberholt testified that he typically followed up a sales call with a phone call to the purchaser. Herberholt Dep. at 168 ln. 8 – 169 ln. 9.

Sales representatives were compensated by commission, which amounted to approximately half of representatives' salaries. Burton Dep. at 67 ln. 21 – 68 ln. 10. In addition, regional sales managers – who spent about fifty percent of their time accompanying sales representatives in the field – received quarterly bonuses based in part on Sicor Pharma's sales in Indiana. Id. at 69 ln. 24 – 71 ln. 14.

Sicor Pharma also engaged in telemarketing focused on smaller Indiana purchasers, particularly those in rural areas. Id. at 84 ln. 23 – 85 ln. 9. Lilly calculates

---

[5](...continued)
are considering different events to constitute "visits." Sicor Pharma representatives apparently did enter Indiana only twenty-three times over two years to conduct sales calls, but that they made 568 sales calls in the course of those visits. Defs.' Reply. at 6 n.4.

5

that there were 101 total telemarketing calls to Indiana customers during the two-year jurisdictional period. Bianco Aff. ¶ 27; Pl.'s Ex. A. Sicor Pharma also advertised its products in national pharmacy trade journals which reached customers nationwide, including Indiana customers. Pl.'s Resp. at 6, citing Burton Dep. at 107-08.

*Teva USA*

Teva USA is a Delaware corporation with its principal place of business in North Wales, Pennsylvania. It is engaged in the generic drug marketing business. Compl. ¶ 4. In addition to generic drug sales, Teva USA sells drugs through its branded division, Gate Pharmaceuticals ("Gate"). Pl.'s Resp. at 8.

Like Sicor Pharma, Teva USA has no real property, facilities, assets, offices, telephone listings, or bank accounts in Indiana. Marshall Aff. ¶ 8. It maintains that it has no salespersons or other employees in Indiana and that no sales transactions are consummated by Teva USA in Indiana. Id. ¶ 9.

Teva USA acknowledges that some of its sales during the years in question were made to Indiana customers. Id. ¶ 10. Teva USA ships generic pharmaceutical products to customers with distribution centers in Indiana, including large retail chain pharmacies like CVS, Wal-mart, and Kroger. These distribution centers then ship Teva USA products to retail chain stores and pharmacies throughout Indiana. Pl.'s Resp. at 7. In 2004, Teva USA sold approximately $          , or 3.65% of its total U.S. sales, in Indiana in this fashion. In 2005, it sold approximately $          , or 4.65% of its total

6

U.S. sales.  In the first two months of 2006, it sold approximately $        , or 3.04% of its total U.S. sales.  Pl.'s Ex. 16, Answer to Interrogatory No. 3.  Thus, Teva USA realized approximately $            in sales to Indiana customers during the jurisdictional period.

Prior to the jurisdictional discovery process, David Marshall, Vice President of Sales and Marketing for Teva USA, represented that Teva USA was not licensed or registered to do business in Indiana.  Marshall Aff. ¶ 8.  However, Lilly discovered and has since introduced evidence establishing that, since at least 1993, Teva USA has held an Indiana wholesale drug distributor license, issued by the Health Professions Bureau of the Indiana Board of Pharmacy.[6]  Pl.'s Ex. 24 (copy of license).  This license is required for companies who engage in wholesale distribution of "legend" (prescription) drugs.  See Indiana Code § 25-26-14-14.

*Teva USA's Indiana Marketing Efforts*

Lilly asserts that, from January 2004 to mid-February 2006, three Teva USA/Gate sales representatives made 568 sales visits to 156 different entities in Indiana to promote at least five different branded products.  Pl.'s Resp. at 8, citing Pl.'s Ex. 18, Bianco Aff. ¶ 28.  During these visits, Teva USA sales representatives would provide promotional

---

[6] In its Reply, Teva USA does not appear to dispute Lilly's assertion that it does in fact hold such a license, arguing instead that holding such a license does not subject a defendant to personal jurisdiction.  Defs.' Reply at 12.  It is unclear whether Mr. Marshall's (apparently) inaccurate prior testimony reflects a misunderstanding on his part or an intentional lack of candor.

7

marketing materials (such as a pen or notepad) or drug samples and would discuss the benefits of the product being discussed.  Krauthauser Dep. at 239 lns. 4-25.

In addition, Lilly asserts (and Teva USA does not dispute) that two Teva USA telemarketers placed at least 299 calls to 59 Indiana healthcare providers in order to promote Teva USA products during the jurisdictional discovery period.  Pl.'s Resp. at 8, citing Krauthauser Dep. at 164-65, 170-72; Pl.'s Ex. 19.  Teva USA also marketed drugs through national pharmacy trade journal advertisements, product catalogs (which were sent to Indiana customers), and its website.  Pl.'s Resp. at 9.

*Sicor Pharma's California Lawsuit against Lilly*

On May 12, 2006, Sicor Pharma filed a declaratory judgment action against Lilly in the Central District of California (cause number CV 06-2898 SJO (VBKx)).  In that action – essentially a "mirror image" of this case – Sicor Pharma sought a declaration that its manufacture and sale of gemcitabine would not infringe upon Lilly's patents and that said patents are invalid.  Defs.' Mem. at 5-6.

On August 22, 2006, Judge S. James Otero of the California federal district court dismissed Sicor Pharma's Complaint without prejudice, applying the terms of the Hatch-Waxman Act (specifically, 21 U.S.C. § 355(j)(5)(C)(i)(I)) which prohibit the filing of a declaratory judgment action by an ANDA applicant (here, Sicor Pharma), if the New Drug Application holder (here, Lilly) has previously filed a civil action within a certain time frame after being notified of the potential patent infringement.  The California

federal district court held that, because Lilly had timely filed this case in our district, Sicor Pharma could not proceed with a parallel declaratory judgment action in California. See Order Granting Defendant's Motion to Dismiss Plaintiff's Complaint and Denying Plaintiff's Cross-Motion for a Stay, CV 06-2898 SJO (VBKx), U.S. District Court for the Central District of California, August 22, 2006. Defendants now seek to have the action pending here dismissed on personal jurisdiction grounds.

## Legal Analysis

### I. Standard of Review

Federal Rule of Civil Procedure 12(b)(2) requires dismissal of a claim where personal jurisdiction is lacking. When "[a] defendant moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating the existence of jurisdiction." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 782 (7th Cir. 2003). When a district court rules on a defendant's motion to dismiss based on the submission of written materials, the plaintiff "need only make out a prima facie case of personal jurisdiction" and "is entitled to the resolution in its favor of all disputes concerning relevant facts presented in the record." Id. (internal citations omitted).

Federal Circuit law governs personal jurisdiction issues in patent infringement cases. See Hildebrand v. Steck Mfg. Co., 279 F.3d 1351, 1354 (Fed. Cir. 2002). A district court may properly exercise personal jurisdiction over a non-resident defendant if

a two-step analysis is undertaken and satisfied. First, the party resisting the exercise of jurisdiction must be amenable to service of process under the state's long-arm statute; second, the exercise of personal jurisdiction must comport with the due process clause of the Constitution. Id. Because Indiana's long-arm statute, Indiana Rule of Trial Procedure 4.4(a), "expand[s] personal jurisdiction to the full extent permitted by the Due Process Clause" (LinkAmerica Corp. v. Albert, 857 N.E.2d 961, 966 (Ind. 2006)), the sole question before us is whether due process would be offended were we to exercise personal jurisdiction over Defendants.

For a court to acquire personal jurisdiction over a defendant, due process requires "that the defendant have such 'minimum contacts' with the forum state as will make the assertion of jurisdiction over him consistent with 'traditional notions of fair play and substantial justice[.]'" Lakeside Bridge & Steel Co. v. Mountain State Const. Co., 597 F.2d 596, 600 (7th Cir. 1979), quoting International Shoe v. Washington, 326 U.S. 310, 316 (1945). In other words, a defendant must have "fair warning that a particular activity may subject them to the jurisdiction of a foreign sovereign." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985), quoting Shaffer v. Heitner, 433 U.S. 186, 218 (1977) (Stevens, J., concurring in judgment).

Personal jurisdiction may be either specific or general. A court exercises specific jurisdiction over a defendant where the cause of action arises out of or relates to a defendant's purposefully established contacts with the forum state. Helicopteros Nacionals de Columbia, S.A. v. Hall, 466 U.S. 408, 414 (1984); Burger King Corp., 471

U.S. at 472. General jurisdiction, however, "is proper when a defendant has 'continuous and systematic business contacts' with a state and it allows a defendant to be sued in that state regardless of the subject matter of the lawsuit." Premiere Credit of North America, LLC v. AAT Fabrication, Inc., 2005 WL 1123636, *2 (S.D. Ind. 2005), citing Helicopteros, 466 U.S. at 416; see also Hyatt Int'l Corp. v. Coco, 302 F.3d 707, 713 (7th Cir.2002); RAR, Inc. v. Turner Diesel, Ltd., 107 F.3d 1272, 1277 (7th Cir.1997). Lilly is not alleging that specific jurisdiction exists over the defendants in this case (Pl.'s Resp. at 17); therefore, we shall address only whether an exercise of general jurisdiction is proper.[7]

The constitutional requirement for general jurisdiction is "considerably more stringent" than that required for specific jurisdiction. United States v. Swiss American Bank, Ltd., 274 F.3d 610, 619 (1st Cir. 2001); ESAB Group, Inc. v. Centricut, Inc., 126 F.3d 617, 623 (4th Cir.1997) ("[T]he threshold level of minimum contacts to confer general jurisdiction is significantly higher than for specific jurisdiction."). "[The] contacts [required for general jurisidiction] must be so extensive to be tantamount to [defendant] being constructively present in the state to such a degree that it would be fundamentally fair to require it to answer in an Indiana court in any litigation arising out of any transaction or occurrence taking place anywhere in the world." Purdue Research Foundation v. Sanofi-Synthelabo, S.A., 338 F.3d 773, 787 (7th Cir. 2003).

---

[7] We note, for the record, that neither the preparation nor the filing of the ANDAs took place within Indiana. Defs.' Mem. at 5.

## II. *Discussion*

When, as here, a case involves multiple defendants, personal jurisdiction must be assessed separately as to each defendant; the plaintiff may not treat the defendants collectively. See Rush v. Savchuk, 44 U.S. 320, 331-32 (1980) (holding that the aggregation of multiple defendants' forum contacts for purposes of personal jurisdiction analysis is "plainly unconstitutional," and noting that, though "the parties' relationship with each other may be significant in evaluating their ties to the forum[, jurisdictional] requirements . . . must be met as to each defendant"). Thus, our analysis proceeds as to each defendant individually.

### A. Sicor Pharma

Sicor Pharma characterizes its contacts with Indiana as quite minimal, stating that "[i]ts sole contact with Indiana is limited indirect sales in the State of products unrelated to Lilly's cause of action." Defs.' Mem. at 12. It points to several cases holding that limited sales within a forum state, in the absence of other contacts with that forum, are insufficient to satisfy the requirements of due process. See, e.g., Amana Refrigeration, Inc. v. Quadlux, Inc., 172 F.3d 852, 857 (Fed. Cir. 1999). Sicor Pharma also asserts that general jurisdiction is rarely found where, as here, a non-resident corporation's sales in a forum constitute a relatively small percentage of that company's overall sales. See, e.g., L.H. Carbide Corp. v. Piece Maker Co., 852 F. Supp. 1425, 1435-36 (N.D. Ind. 1994) (holding that a company which had sold between 0.5% and 8% of its annual sales in

Indiana over a five-year period did not have continuous and systematic contacts with Indiana). Further, it contends that consideration of "downstream" sales (which are first routed through an out-of-state wholesaler) improperly invokes a "stream of commerce" theory, which is inapposite in the general jurisdiction analysis.[8]

Lilly rejoins that the Federal Circuit has held that millions of dollars in sales, without further contacts, *may* be a basis for general personal jurisdiction. Lilly cites LSI Industries, Inc. v. Hubbell Lighting, Inc., 232 F.3d 1369 (Fed. Cir. 2000), in support of this proposition. In that case, the defendant "employ[ed] multiple distributors in Ohio and net[ted] several millions of dollars per year from sales in Ohio." Id. at 1370. The court held that the defendant's millions of dollars of sales . . . over the past several years and its broad distributorship network" provided a basis for general personal jurisdiction. Id. at 1375. Though Sicor Pharma's distributors are not located in Indiana, Lilly maintains that Sicor Pharma's substantial revenues – approximately $          in sales over two years – derived through sales (to at least 725 customers) in Indiana establish continuous and systematic contacts with the forum.

In addition, Lilly argues, Sicor Pharma's regular and consistent contacts with Indiana customers – 156 in-person sales calls over two years and numerous telemarketing calls, as well as advertisements in national trade journals – serve as a sufficient basis for

---

[8] In its Complaint, Lilly initially alleged that we should exercise personal jurisdiction over both defendants in part because they had introduced goods into the "stream of commerce" with the intent that they would be distributed in Indiana. As Defendants properly note, this "stream of commerce" theory may not serve as a basis for an exercise of *general* jurisdiction. See Purdue, 338 F.3d at 788. Lilly has since abandoned this line of reasoning. Pl.'s Resp. at 17.

personal jurisdiction. Though Sicor Pharma characterizes these efforts as "driving compliance" with a customer's GPO contract, Lilly maintains that "the purpose of the sales representatives' visits was to ensure that a significant amount of Sicor Pharma's products were [sic] purchased by Indiana customers." Pl.'s Resp. at 13.[9]

It is clear to us that Sicor Pharma does have continuous and systematic contacts with Indiana which permit an exercise of general personal jurisdiction over it here. The fact that Sicor Pharma sells products in Indiana through out-of-state, independent wholesalers, rather than through "direct" sales to Indiana customers, does not change our conclusion. The presence of a GPO "middleman" does not insulate Sicor Pharma from its having purposefully availed itself of the forum state by generating worth of commercial activity in Indiana through its sales efforts. Sicor Pharma clearly intended such effects by actively encouraging them through targeted marketing efforts within Indiana. "[W]e must focus upon the *economic reality* of the defendants' activities rather than a mechanical checklist." Gates Learjet Corp. v. Jensen, 743 F.2d 1325, 1331 (9th Cir. 1984) (emphasis added); Fanimation Design & Mfg., Inc. v. Nicor, Inc., 2003 WL 21766572 at *6 (S.D. Ind. 2003) ("The scope of what constitutes doing business is

---

[9] In addition, Lilly initially alleged in its Complaint that Sicor Pharma was a "directly controlled" subsidiary of Teva USA, potentially giving rise to an assertion that personal jurisdiction over one defendant might imply jurisdiction over the other. Defendants argue vigorously that corporate formalities are stringently observed within the two companies, and that personal jurisdiction may not be premised on corporate affiliation in such situations. See Defs.' Mem. at 14-16; Central States, Southeast and Southwest Areas Pension Fund v. Reimer Express World Corp., 230 F.3d 934, 943 (7th Cir. 2000). In its Response, Lilly concedes that it is not (or is no longer) asserting jurisdiction on this basis. Pl.'s Resp. at 17.

not . . . narrow. A company need not be selling directly to consumers to be doing business in the state. [Because the defendant] regularly contacted distributors of its products in the state . . . to promote its products[, t]he Court is hard pressed to call this purposeful availment either random or fortuitous."). The frequent and numerous sales calls and telemarketing efforts Sicor Pharma conducted within Indiana to encourage such sales also constitute continuous and systematic contacts which support an exercise of jurisdiction. Compare Best Lock Corp. v. Ilco Corp., 32 U.S.P.Q.2d 1223 (S.D. Ind. 1994) (exercising general jurisdiction when defendant shipped over half a million dollars' worth of products to 37 customers in Indiana each year, stating that "[w]ith that much activity it cannot be said that [the defendant] would not fairly expect to be haled into court in Indiana"); 3M Innovative Properties Co. v. InFocus Corp., 2005 WL 361494 (D. Minn. 2005) (exercising general jurisdiction when defendant generated $3.8 million in revenue from sales – only 0.64% of its total sales – in the forum state, and defendant's employees had made 21 visits to the forum state in one year).

     In our view, an exercise of jurisdiction over Sicor Pharma is completely reasonable, in taking a balanced view of the various policy considerations, including the burden on the defendant, the interests of the forum state, plaintiff's interest in obtaining relief, the efficient resolution of controversies, and the interest of the states in furthering social policies. Viam Corp. v. Iowa Export-Import Trading Co., 84 F.3d 424, 429 (Fed. Cir. 1996). Sicor Pharma's arguments do not convince us that based on these factors an exercise of jurisdiction would be unreasonable. In light of Sicor Pharma's significant

contacts with the forum, and in the absence of convincing evidence to the contrary, we conclude that litigating here would not be unreasonably burdensome. Moreover, the quantity of Sicor Pharma's pharmaceutical sales directed to Indiana gives this state a substantial interest in the resolution of the suit. Therefore, we conclude the motion to dismiss insofar as it applies to Sicor Pharma must be denied and the court shall proceed to exercise personal jurisdiction over Sicor Pharma.[10]

### B.  Teva USA

The parties' arguments regarding personal jurisdiction over Teva USA are substantially similar to those advanced with respect to Sicor Pharma; thus, our analysis is much the same. As with Sicor Pharma, Teva USA maintains that its limited contacts with Indiana are not continuous and systematic and do not give rise to an exercise of general personal jurisdiction. Lilly maintains that Teva USA's approximately $         in pharmaceutical sales shipped to Indiana over two years, 568 sales visits to 156 different healthcare providers, and 299 telemarketing calls (as well as national advertising campaigns) clearly establish continuous and systematic contacts with the forum state.

Based on our separate review, we conclude that Teva USA's contacts with Indiana also constitute a sufficient basis for general personal jurisdiction. Teva USA directed

---

[10] Because we have concluded that an exercise of personal jurisdiction over Sicor Pharma is warranted, we do not address Defendants' contentions that, if we were to find that jurisdiction were lacking over Sicor Pharma, we would be compelled to dismiss this action in its entirety, pursuant to Federal Rule of Civil Procedure 19 (which bars litigation when an indispensable party cannot be joined).

of dollars' worth of drugs into Indiana during the two years under consideration, made hundreds of sales visits and telemarketing calls, and was licensed as a wholesale pharmaceutical distributor in Indiana. These activities unquestionably constitute "continuous and systematic general business contacts" with and in the state of Indiana (see Helicopteros, 466 U.S. at 416 (1984)), and, in light of such contacts, an exercise of jurisdiction over Teva USA in this district is reasonable and Teva USA is subject to suit here.[11]

### III.  Venue and Transfer

Defendants also assert that venue is improper in this district under 28 U.S.C. § 1400(b), which provides that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business." In VE Holding Corp. v. Johnson Gas Appliance Co., 917 F.2d 1574, 1584 (Fed. Cir. 1990), the Federal Circuit ruled that venue in patent infringement cases is appropriate in a judicial district in

---

[11] In addition, Teva USA contends (albeit briefly and without significant support) that it has no connection to this dispute, because Lilly's cause of action arises solely out of activities (the filing of ANDAs) conducted by Sicor Pharma, and Teva USA should therefore be dismissed from the suit on that basis. However, Lilly has clearly alleged in its Complaint that Teva USA "acted in concert, actively supporting, participating in, encouraging, and inducing" Sicor Pharma's preparation of ANDAs. Compl. ¶ 18. Lilly asserts that these allegations are sufficient to support a cause of action against Teva USA. See Smithkline Beecham Corp. v. Geneva Pharms., Inc., 287 F.Supp.2d 576, 587 (E.D. Pa. 2002). Lilly's allegations support a cause of action against Teva USA, and, because Teva USA has not developed its arguments beyond their bare assertion, we do not analyze the matter further. See Ehrhart v. Secretary of Health and Human Servs., 969 F.2d 534, 537 n. 5 (7th Cir. 1992) (a court "need not devote its time to discussion of an argument raised, if at all, in a very opaque manner") (citation omitted).

which a defendant is subject to personal jurisdiction at the time the action was commenced. Defendants' sole argument for improper venue is that personal jurisdiction is lacking. Because we have concluded otherwise, venue may be properly set in this district.

In addition, Defendants argue that, if we do not dismiss the case, we should transfer this case to the Central District of California, pursuant to 28 U.S.C. § 1631. Again, Defendants' sole argument for transfer is a claimed lack of personal jurisdiction. Because Defendants' position on personal jurisdiction has been deemed unavailing, we DENY their request for transfer.

Having determined that personal jurisdiction over both Sicor Pharma and Teva USA can properly be exercised in this district, we DENY Defendants' Motion to Dismiss or Transfer. IT IS SO ORDERED.

Date: ___04/27/2007_____

_____
SARAH EVANS BARKER, JUDGE
United States District Court
Southern District of Indiana

Copies to:

Robert D. Bajefsky
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
robert.bajefsky@finnegan.com

L. Scott Burwell
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
scott.burwell@finnegan.com

Jan M. Carroll
BARNES & THORNBURG LLP
jan.carroll@btlaw.com

Stefan Charles Grant
KENYON & KENYON LLP
sgrant@kenyon.com

Kandi Kilkelly Hidde
BINGHAM MCHALE
khidde@binghammchale.com

Elizabeth J. Holland
KENYON & KENYON LLP
eholland@kenyon.com

Steven J. Lee
KENYON & KENYON
slee@kenyon.com

Charles Edmund Lipsey
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
charles.lipsey@finnegan.com

Laura P. Masurovsky
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
laura.masurovsky@finnegan.com

Robert Francis McCauley
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
robert.mccauley@finnegan.com

Sheila Mortazavi
KENYON & KENYON LLP
smortazavi@kenyon.com

Aaron Mark Raphael
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER, LLP
aaron.raphael@finnegan.com

Barbara R. Rudolph
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
barbara.rudolph@finnegan.com

Robert Frederic Shaffer
FINNEGAN HENDERSON FARABOW GARRETT & DUNNER LLP
robert.shaffer@finnegan.com

David O. Tittle
BINGHAM MCHALE
dtittle@binghammchale.com